IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Gregory Ketter, | : | |
| Plaintiff | : | Civil Action 2:11-cv-00734 |
| v. | : | Judge Watson |
| City of Newark, Ohio, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

# ORDER

Plaintiff Robert Gregory Ketter brings this action against the City of Newark, Ohio, Mayor Bob Diebold, Judith Carr and Donna Sears alleging violations of 42 U.S.C. § 1983 and Ohio law. This matter is before the Magistrate Judge on plaintiff Ketter's February 28, 2014 motion for attorney fees (doc. 94). Plaintiff seeks an award of attorney fees and costs in the amount of $23,140.00 in connection with the resolution of a discovery dispute in his favor. *See* doc. 76.

Defendants City of Newark, Bob Diebold, Judith Carr, and Donna Sears' unopposed motion for an extension of time in which to file a response to plaintiff's motion for attorney fees (doc. 128) is GRANTED.

## I.    Arguments of the Parties

Defendants maintain that this case is one of the most over-litigated cases pointing to the fact that plaintiff has served 96 interrogatories and 208 document

requests. Defendants contend that they have produced box after box of documents. Defendants also maintain that plaintiff's motion to compel was substantially limited through negotiation and the Court's ruling.

Defendants argue that the sanctions should not be awarded because (1) the moving party's theory was novel; (2) the defendants presented both fact and legal support for their positions; (3) defendants' position was not asserted in bad faith as is evidenced by the fact that over a dozen banker's boxes of documents were produced and only two interrogatories and three requests for production were brought to the Court's for resolution; and, (4) no prejudice resulted because defendants' position that the documents were not relevant was ultimately proved correct.

Defendants note that the Court initially denied plaintiff's request for legal invoices because he failed to explain their relevance. Following the Court's July 23, 2012 Order, defendants produced a privilege log for the matters involving plaintiff and invoices for special or outside counsel. Defendants maintain that during an August 24, 2012 deposition, counsel for defendants requested an explanation of how invoices in unrelated human resource matters could be relevant to plaintiff's retaliation claim, but counsel for plaintiff refused to respond. On August 29, 2012, counsel for defendants sent a letter requesting an explanation of plaintiff's assertion that the invoices were relevant. On September 17, 2012, plaintiff filed his second motion to compel, which contained an explanation of his relevance argument. Defendants objected on the basis

that the requests were overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

On August 6, 2013, the Court granted plaintiff's motion to compel in part and concluded that plaintiff had not explained how documents pertaining to human resource matters not involving disciplinary actions or termination proceedings could lead to admissible evidence. Plaintiff, however, was permitted to test his theory concerning fee information and reopen the deposition of Mayor Diebold, but the Court withheld a decision on sanctions until discovery was completed. On January 14, 2014, plaintiff re-opened Mayor Diebold's deposition to allow plaintiff to test his theory. Defendants maintain that at the deposition, plaintiff's pretext theory was eviscerated because Diebold testified that he did not make the decision to hire outside counsel and did not have the authority to do so. Diebold testified that the decision was made by the law director, Mr. Sassen.

Prior to ruling on plaintiff's motion to compel the defendants attempted to resolve the discovery dispute, and plaintiffs acknowledged that invoices from third-party insurance counsel were not relevant.

Defendants argue that attorney fees are not appropriate because their objections were substantially justified. Defendants maintain that they did not have an obligation to respond to plaintiff's requests as written because the requests were not facially relevant. Because plaintiff had the burden of establishing the relevancy of his requests, defendants maintain that they were justified in asserting their objections and should not

3

be responsible for plaintiff's attorney fees. By the time that plaintiff explained his relevance argument, he had already incurred the cost of preparing his motion to compel.

Defendants also contend that their position that discovery should be limited to Diebold's administration was supported by law. Plaintiff was terminated in 2009, and all the events alleged in the complaint occurred during Diebold's administration. Defendants argued that discovery should be limited to Diebold's administration and the time frame of the alleged retaliatory conduct. Because this position was not an unreasonable reading of the law and was supported by legal authority, defendants argue that attorney fees are not appropriate.

Defendants objected to plaintiff's requests seeking documents comprising, describing or memorializing bills or invoices for legal services submitted by, and payments made to, legal counsel that were identified in response to interrogatories. Defendants objected on the grounds of attorney client privilege, undue burden of producing a privilege log, and relevance. Defendants maintain that their position was supported by case law that limited the production of invoices to cases where fees were at issue in the particular case, and plaintiff failed to produce a single case supporting his requests for billing invoices. Considering the sensitive nature of billing entries, an attorney would not instruct a client or insurance carrier to produce invoices without citation to legal authority requiring the production. Defendants argue that sanctions are

not appropriate when issues raised were largely unprecedented and the opposition was not frivolous.

Defendants further maintain that plaintiff failed to explain how billing invoices could lead to evidence of pretext. Because every case is different, even if plaintiff was able to establish that defendants expended less legal fees in prior human resource matters, it would not be relevant to plaintiff's claim that he was terminated in 2009 as a result of his 2004 lawsuit. Defendants also argue that they were justified in asserting that producing an itemized privilege log of all of its legal invoices since 2003 was unduly burdensome. Although defendants did not attempt to compile the invoices prior to the Court's order, defendants contend that they did not need to undertake the task of locating every invoice since 2003 to determine that compiling a line-by-line privilege log would be unduly burdensome. The effort taken to redact the invoices was a waste of time because the invoices revealed nothing about the City's protocol in handling human resource matters. In fact, plaintiff does not reply on the billing invoices to show pretext in opposing defendants' motion for summary judgment.

Defendants further argue that because the Court sustained defendants' objections in part, discovery sanctions are not appropriate. The court agreed that plaintiff's requests were overly broad, and the narrowing of plaintiff's requests was only accomplished as a result of defendants' objections. Because defendants did not have an improper motive in objecting to the discovery requests, an award of attorney fees is not proper. Defendants maintain that Diebold's re-opened deposition destroyed

plaintiff's pretext theory. Plaintiff's pretext theory focused on a statement in the *Newark Advocate* that plaintiff asserted was a quote from Diebold indicating that he was forced to hire outside legal counsel because he could not trust the law director's advice or confidentiality. Plaintiff also claimed that the law director had expressed the view that plaintiff did not deserve to be terminated and that Diebold excused him from the case as a result.

Defendants maintain that the Diebold's re-opened deposition destroyed plaintiff's pretext theory. In his deposition, Diebold testified that he did not hire outside counsel and did not have authority to do so and that the decision was made by the law director. According to defendants, the very basis for plaintiff's discovery requests–that Diebold retained outside counsel because of the law director disagreed with the decision–turned out to be unsubstantiated as defendants had claimed.

Defendants argues that the Court should consider the enormous scope of discovery and defendants' good faith throughout. Defendants contend that the parties had legitimate disagreements on a fraction of the voluminous discovery.

### B.    Plaintiff

Plaintiff argues that defendants' refusal to examine, generate a privilege log, produce redacted copies, or identify the lawyers hired by the City was far from substantially justified. Plaintiff maintains that defendants have conflated two similar yet distinct theories of relevance related to the discovery dispute. Both of plaintiff's theories concerned the manner in which the City may have deviated from its normal practices in

6

order to fire Ketter, and both theories were potential ways to demonstrate pretext. Ketter's first theory concerned whether the City "lawyered up" far earlier than was typical of the City, and he asked the defendants to identify outside counsel in 5-6 human resource cases from 2003 to 2009 and sought letters of engagement, retainer agreements, invoices and payment records to establish a baseline for the City's decision to "lawyer up." Ketter was given the impression that these documents contained such a significant amount of information about what the lawyers had done and when they had done it that redacting the information would be burdensome. Ketter abandoned this theory based on the discovery responses he eventually received because the City kept no records that could demonstrate when the lawyers in this case or any other case were retained, what they may done, or when they did it.

Plaintiff also argues that his alleged failure to notify defendants of the relevance of the documents prior to filing his motion to compel is neither true nor a basis upon defendants actually relied. When Ketter moved for an order compelling discovery, he certified that counsel had attempted to resolve the dispute extrajudicially. At no time did defendants assert that Ketter had failed to confer in good faith.

Plaintiff maintains that defendants' assertion that they were asked to produce invoices and other documents unrelated to disciplinary matters was not raised until they filed objections to the Magistrate Judge's Order. Defendants did not argue that the discovery requests were overbroad in their opposition to the motion to compel. Only in their objections did defendants claim that they had been asked to produce information

regarding counsel hired to negotiate collective bargaining agreements and other matters unrelated to disciplinary actions. Ketter responded that such labor issues were not included within his request for human resource matters and that he did not request defendants produce documents solely related to the negotiation of collective bargaining agreements or non-disciplinary labor disputes. Defendants also neglect to mention that the requests excluded representation in this case. The Court's Order did not, as defendants imply, reduce defendants' obligation to produce documents. Defendants ultimately produced documents related to six human resource matters, which is the number of cases plaintiff's originally believed were responsive to his requests. Furthermore, defendants evidently found it easier to produce a big pile of invoices than delete the non-responsive ones in spite of the Court's supposed narrowing of the request.

Plaintiff argues that defendants were not substantially justified in their refusal to produce legal invoices and related documents on the basis that it was unduly burdensome when defendants were previously ordered to produce a privilege log of all documents claimed to be privileged. Defendants did not secure and examine the documents as required by the Court's order, and they falsely exaggerated the extent to which complying with the discovery requests was unduly burdensome. Failing to conduct a proper document review cannot support a finding that their position was substantially justified. Defendants' position that it there was no reason for them to undergo the burden of locating invoices because they legitimately believed that the

8

invoices were not relevant is without merit; defendants were obligated to produce a privilege log and were ordered to do so.

Plaintiff further argues that defendants misunderstand the basic concepts of relevance by arguing that certain types of evidence are categorically irrelevant in all cases. Insisting that production be limited to the tenure of Mayor Diebold was not substantially justified when he had previously denied being the decision-maker. Relying a on few decisions that held fee information and billing invoices were not relevant to argue that such documents are never relevant under any circumstances was also not substantially justified, according to plaintiff. Plaintiffs maintain that the fact that discovery sought did not turn out to be useful is irrelevant.

Counsel for defendants prevented Mayor Diebold from answering questions improperly based on fears that subsequent questions could inquire into privileged communications. Plaintiff maintains that none of the lines of questioning concerned privileged communications, although he believed that the privilege had been waived in any event. The fear that a party may eventually ask an objectionable question is not a permissible ground to cut off questioning under Rule 30(c)(2).

Plaintiff notes that defendants do not claim that the hours counsel expended on this protracted, two-year controversy is unreasonable, nor do they take issue with counsel's hourly rates or their reasonableness of in this community. Plaintiff also seeks the subsequently incurred fees and expenses in connection with its motion.

## II.      Discussion

Under Rule 37(a) of the Federal Rules of Civil Procedure, a court must award

attorney fees if a party prevails on a motion to compel discovery unless "the opposing

party's nondisclosure, response, or objection was substantially justified" or "other

circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5).

The Sixth Circuit has identified a four factor test to determine if the imposition of

sanctions was appropriate:

> A motion is "substantially justified" if it raises an issue about which
> "there is a genuine dispute, or if reasonable people could differ as to the
> appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552,
> 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations and quotation marks
> omitted). As noted by the Supreme Court, "the one [connotation] most
> naturally conveyed by the phrase before us here ["substantially justified"]
> is not 'justified to a high degree,' but rather 'justified in substance or in the
> main'—that is, justified to a degree that could satisfy a reasonable
> person." *Id.*

> This circuit has adopted a four-factor test to determine whether a district
> court's decision to impose sanctions under Rule 37 amounts to an abuse of
> discretion:

> The first factor is whether the party's failure to cooperate in discovery is
> due to willfulness, bad faith, or fault; the second factor is whether the
> adversary was prejudiced by the party's failure to cooperate in discovery;
> the third factor is whether the party was warned that failure to cooperate
> could lead to the sanction; and the fourth factor in regard to a dismissal is
> whether less drastic sanctions were first imposed or considered.

*Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir.1997).

Here, defendants' objections to plaintiff's discovery requests were not the result

of wilfulness, bad faith, or fault. Defendants argued that the requests were overbroad

10

given that they sought human resource matters dating back to 2003 even though plaintiff was not terminated until 2009 and Mayor Diebold did not take office until 2008. Defendants also maintained that the amount of fees and length of representation was irrelevant because each case differs based on witnesses, venue, trial schedule and motion practice. Although the Court concluded that the discovery sought could lead to the discovery of admissible evidence, defendants's objections were not unreasonable. Courts frequently limit discovery based on the fact that it is not near enough in time to the actionable conduct to be relevant. Discovery may also be limited to those actions of the decision maker. Here, there was some question as to who the relevant decision maker was, and it was not unreasonable to attempt to limit the discovery to the period of time when Mayor Diebold was in office.

With respect to the second factor, plaintiff was not prejudiced by defendants' conduct. Plaintiff ultimately obtained the discovery he sought. There are no issues concerning spoliation of evidence, and the delay in receiving the discovery did not hinder plaintiff's ability to litigate his claim. Although it is true that it was necessary for plaintiff to file a motion and response to defendants' motion for reconsideration in order to obtain the discovery, defendants' legal arguments were not frivolous. Rather, defendants had a genuine legal dispute as to whether the discovery sought was relevant.

Neither the third or fourth factor is applicable to this case. It was not necessary to warn defendant that a court may award attorney fees if a party prevails on a motion to

compel discovery under Rule 37.  Here, defendants raised issues about which there is a genuine dispute and reasonable people could differ as to the appropriateness of the contested action. *Weimer v. Honda of America Mfg., Inc.*, No. 2:06-cv-844, 2008 WL 1775522, at *3 (S.D. Ohio, Apr. 17, 2008) ("[T]he Court concludes that plaintiff's pursuit of a legal theory that is supported by some-albeit ultimately unpersuasive-authority renders an award of expenses unjust.").

For the reasons stated above, plaintiff Ketter's February 28, 2014 motion for attorney fees (doc. 94) is DENIED.

### III.    Conclusion

Plaintiff Ketter's February 28, 2014 motion for attorney fees (doc. 94) is DENIED. Defendants City of Newark, Bob Diebold, Judith Carr, and Donna Sears' unopposed motion for an extension of time in which to file a response to plaintiff's motion for attorney fees (doc. 128) is GRANTED.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge.  The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/Mark R. Abel
United States Magistrate Judge